## TRESCHMAN v. TRESCHMAN, BY NEXT FRIEND.

[No. 3,635.   Filed November 15, 1901:   Rehearing denied January 14, 1902.]

PARENT AND CHILD.—*Loco Parentis.*—*Assault Upon Child.*—*Stepmother.*—Even though a stepmother stands *in loco parentis* to her stepchild she is not thereby relieved from liability for a malicious assault made by her upon the child.   *pp. 210–212.*

APPEAL AND ERROR.—*Evidence.*—*Objections.*—Objections to the admission of evidence not made to the trial court will not be considered on appeal.   *p. 212.*

EVIDENCE.—*Parent and Child.*—*Stepmother.*—*Assault Upon Child.*—In an action by a child against her stepmother for damages for an assault, the testimony of the father that he informed her sisters thereof when they came home, in the afternoon of the day of the assault, was competent as tending to fix the time of the assault.   *pp. 212, 213.*

SAME.—*Objection.*—*Motion to Strike Out.*—Where no objection is made to a question or answer, and the answer is responsive to the question, a motion to strike out comes too late.   *p. 213.*

SAME.—*Assault.*—*Damages.*—*Expressions of Suffering.*—In an action for damages on account of personal injuries resulting from an assault, an objection to a question as to what "complaint," if any, plaintiff ever made to witness of any suffering was properly overruled, as the word "complaint" was doubtless understood by the witness to mean "what expression of pain."   *pp. 213, 214.*

SAME. —*Assault.* —*Damages.* —*Reputation of Defendant for Peace and Quiet.*—In the trial of an action for damages for personal injuries resulting from an assault by a stepmother upon her stepchild evidence of the general reputation of defendant for peace and quiet was properly excluded.   *p. 214.*

SAME.—*Hearsay Evidence.*—In an action by an infant against her stepmother for personal injuries, evidence that it was the general repute in the neighborhood that the weakness of plaintiff's eyes was caused from measles, and that plaintiff's mother told witness in the presence of plaintiff, then two years old, that plaintiff had had the measles and that it had caused her eyes to become weak, was properly rejected as hearsay.   *pp. 214, 215.*

Treschman *v.* Treschman.

EVIDENCE.—*Assault.—Damages.—Statements Made by Plaintiff.*—In an action by an infant against her stepmother for injuries resulting from an assault, evidence by the son of defendant, who lived with the family, that he never heard plaintiff, nor any member of the family, in the presence of plaintiff, speak of the assault, was properly rejected, as the offered evidence did not tend to negative any disputed fact essential to plaintiff's cause of action. *pp. 215, 216.*

TRIAL.—*Instruction.—Parent and Child.—Assault by Stepmother.—Damages.*—In an action by an infant against her stepmother for damages for personal injuries caused by an assault, an instruction that defendant was entitled to the protection which the law gives the parent in the reasonable chastisement of the child was properly refused, where defendant denied that any punishment whatever was inflicted. *pp. 216, 217.*

SAME.—*Instruction.—Parent and Child.—Assault by Stepmother.—Damages.*—In an action by an infant against her stepmother for damages for injuries resulting from an assault in which it was contended by the defendant that the injuries were the result of disease, the defendant was not harmed by the refusal of an instruction to the effect that plaintiff could not recover if the evidence showed that the injuries complained of resulted from disease instead of punishment, where the jury were informed ·in other instructions that plaintiff must show by a preponderance of the evidence that she was injured in some of the respects alleged as a direct result of the punishment complained of. *pp. 217, 218.*

SAME. — *Incomplete Instructions. — Parent and Child. — Assault by Stepmother.—Damages.*—Instructions in an action by an infant against her stepmother for damages for personal injuries resulting from an assault in which the court undertook to define the *quantum* of proof required to sustain the complaint, enumerating the elements in plaintiff's case required to be shown by a preponderance of the evidence without mentioning the question of the presumption of defendant's innocence, were sufficient as against a party not asking further instructions. *p. 218.*

SAME.—*Instruction as to Reputation for Truth.*—An instruction that a man's reputation for truth is made by what his neighbors generally say of him in this regard, if they say he is untruthful that makes his general reputation for truth bad, but, "upon the other hand, if a man's neighbors say nothing whatever about him as to his truthfulness, that fact of itself is evidence that his general reputation for truth is good" is correct, and does not invade the province of the jury. *p. 219.*

NEW TRIAL.—*Misconduct of Jury.—Affidavit.*—An affidavit for a new trial because of the alleged misconduct of the jury in making a quotient verdict which fails to disclose affiant's source of information furnishes no legal proof of the alleged misconduct. *pp. 220, 221.*

From Tippecanoe Superior Court; *W. D. Wallace,* Judge.

Action by Edith Treschman against Lena Treschman for damages for an assault. From a judgment for plaintiff, defendant appeals. *Affirmed.*

*J. F. Hanly* and *W. R. Wood,* for appellant.
*G. P. Haywood* and *C. A. Burnett,* for appellee.

ROBINSON, J.—Action by appellee, by next friend, for damages for alleged personal injuries resulting from an assult and battery committed by appellant. Complaint in one paragraph, answer in denial. Trial by jury and verdict for appellee. Motion for a new trial and in arrest of judgment overruled.

The complaint avers that appellee is thirteen years old and has always lived with her father; that appellant is her stepmother and was married to her father about eighteen months prior to the time appellee received the injuries complained of; that a few months after the occurrence of the injuries, appellee's father and stepmother ceased to live together and have been living apart ever since; that about six months after the marriage and for about a year previous to the injuries appellant treated appellee cruelly and inhumanly, frequently striking and beating her; that appellee performed her duties as a child toward her stepmother as best she knew how, and was dutiful and kind to her; that, before injured, appellee was a strong, healthy girl, had good eyesight, attended public school and helped her father and stepmother with the work about the home; "that on the — day of April, 1897, the defendant became angered and enraged at the plaintiff, without any fault of the plaintiff and without any cause, angrily and maliciously seized the plaintiff and grasped her with her hands on each side of plaintiff's head, by plaintiff's ears, while standing in front of her and with anger rudely and with great force jammed her head back against a brick wall, and repeatedly five or six times struck the back of plaintiff's head with great force against said brick wall; that the plaintiff while thus receiving said

blows, on account of the intense pain caused by them, screamed, whereupon plaintiff's father rushed to her assistance and broke defendant's hold upon her, when plaintiff fell to the floor unconscious because of the injuries to her head that she had received as aforesaid; that she soon after regained consciousness but suffered intense pain at the back of her head all day and the following night, sleeping little if any during the night on account of said pain; that the next day she continued to suffer from severe pains in the head, and has so suffered almost if not quite continuously ever since"; that a few days after receiving the injuries she could not bear any weight on her heels, in walking, because of the pain to her head caused by the jar, and that ever since she has had to walk with the greatest care on account of the severe pain in her head caused by the slightest jar. It is further averred that on account of the injuries she could not read or study and that to do so aggravated her injuries and increased her suffering and in consequence she has been compelled to quit school and is not able to attend school; that the injuries to her head "have caused an inflammation of the membrane covering the cranium, and have produced concussion or inflammation of the membranes of the brain, and have also affected that part of the brain where the sensation of vision is received, resulting in an inflammation of the optic nerves, injuring the eyesight to an extent of not less than eighty per cent loss thereof, with great danger of total blindness following"; that on account of the injuries, she suffers with constant and severe pains in her head, is nervous and sleepless, appetite impaired, her nervous system affected, and that she requires constant care and attendance; that her injuries are of a permanent character and incurable, are growing worse, and that thereby she has been rendered a permanent invalid incapable of study or acquiring an education, and incapable of labor or of caring for herself.

The sufficiency of the complaint is questioned for the first

time on appeal. Against the complaint it is argued, that, as the stepmother stands *in loco parentis* to an infant step-child, and as the relation of parent and child existed be-tween appellant and appellee, it is against the policy of the law to permit an action like that at bar to be maintained. That a stepfather or a stepmother stands *in loco parentis* to an infant child is true in a limited sense. A person can not be said to occupy that relation unless he is invested with the rights and charged with the duties of a parent. A father is legally bound to support his child, but he is not legally bound to support a stepchild. He may lawfully decline to receive the infant children of his wife by a prior marriage into his family. He may voluntarily assume such a relation to stepchildren that the doctrine as to compensation for services and necessaries will be the same as with refer-ence to his natural children. But his marriage to the mother of infant children does not of itself place him *in loco parentis* to such children. *Grossman v. Lauber*, 29 Ind. 618. While the infant children of the wife by a for-mer marriage may or may not be members of the family after the new relation is formed, yet, it necessarily follows that the infant children of the husband by a prior marriage are members of the family into which the stepmother has come by marriage. But, let it be admitted that the step-mother stands *in loco parentis* to such infant children, what legal duties are imposed upon her toward such children? While the father lives, is there any duty the mother owes the child that may be enforced? Do not the reciprocal rights and duties of mother and infant children, while the father lives, rest entirely upon principles of natural law? She can not be held for the child's support. She has no in-dividual right to the child's services.

We quite agree with appellant's counsel that courts should hesitate to invade the privacy of the home, or to question that mutual confidence which should obtain in the household. But this privacy and mutual confidence should

Treschman *v.* Treschman.

not be permitted to shield an evil doer from the consequences flowing from a palpable wrong. They are not sufficient to shield the parent from a criminal prosecution for an assault and battery on his child. *Hinkle* v. *State*, 127 Ind. 490; *Hornbeck* v. *State*, 16 Ind. App. 484. Nor can it be said that such criminal prosecutions are ample to correct and punish all such abuses. They may afford protection from parental violence and wrongdoing thereafter, but the fine which the State has imposed leaves the clear and palpable injustice to the individual child still unredressed. It is not to be anticipated that acts so abhorrent to the family relation will be committed, but when they have been committed and have been committed *malo animo* as here charged, and an injury inflicted which can never be compensated for thereafter through the family relation, howsoever exemplary it may be, courts should not hesitate to redress the wrong in so far as it may be redressed through an action for damages. We are not here concerned with the right of an adult child to sue a parent for a tort committed during infancy. There may be good reasons for denying this right where the minor child, after the injury, continues, possibly for many years, at home and unemancipated, and upon arriving at majority seeks to recover damages for such injury. And it may be admitted that there may be good ground for questioning an infant child's right of action against its father, or against the mother as head of the family, but we are not prepared to say that in *no case* should such an action be allowed. In Reeve's Domestic Relation, (4th ed.) 357, in discussing the right and the duty of a parent to correct his minor child, the author says: "The true ground on which this ought to be placed, I apprehend, is, that the parent ought to be considered as acting in a judicial capacity when he corrects, and, of course, not liable for errors of opinion; and although the punishment should appear to the triers to be unreasonably severe, and in no measure proportioned to the offense, yet, if it should also appear

that the parent acted conscientiously, and from motives of duty, no verdict ought to be found against him. But when the punishment is, in their opinion, thus unreasonable, and it appears that the parent acted, *malo animo*, from wicked motives, under the influence of an unsocial heart, he ought to be liable for damages. For error of opinion, he ought to be excused; but for malice of heart, he must not be shielded from the just claims of the child." In the case at bar when the suit was brought the father and appellant had for some time been separated and living apart. The family relation, so far as appellant was concerned, had ceased to exist. But, aside from that, the facts averred in the complaint show that a grievous wrong was done appellee, and that it was maliciously done. From the particular facts averred it would be a denial of justice to say that no right of action exists because of the parental relation which existed between the parties at the time the injuries were inflicted.

Under the motion for a new trial it is argued that certain competent evidence was excluded, and incompetent evidence admitted; that certain instructions were improperly given and that certain others tendered were improperly refused. Only such objections to the admission of evidence as are made to the trial court will be considered on appeal.

The father of appellee testified that two of his daughters came home in the afternoon of the day of the alleged assault and battery. He was asked if he informed these daughters of the injury or trouble, and over appellant's objection, he answered that he did. The witness did not state anything he told the daughters. This evidence was competent as tending to fix the time the daughters came home, and the time of the trouble. We fail to see how the simple statement that he did inform them could harm appellant. While appellee was testifying she stated that her sisters came home that day, and was asked whether they were told by her or her father as to what had occurred, and without objection, she answered that they were. One of the sisters

also testified, without objection, that she went home in the afternoon and was informed of the occurrence. The fact that the father a few minutes before he was asked this question had detailed to the jury the facts as to the occurrence, his answer that he told his daughters was not equivalent to stating to the jury what he told his daughters.

A brother of appellee testified that in August 1897, appellee "was complaining at that time of not feeling good." A motion to strike out was made that "it is not evidence as to present pain." A sister of appellee testified that in June 1897 appellee "was not feeling well at all, she was always complaining." A motion was made to strike out because the answer is the expression of the opinion of the witness without stating the facts upon which it is based, and that it was not a statement or expression of present pain. The record does not show that any objection was made to either the questions or the answers in the above, and, the answers being pertinent and responsive to the questions, it has been held that the objection by motion to strike out comes too late. *Brown* v. *Owen*, 94 Ind. 31; *Cleveland, etc., R. Co.* v. *Wynant*, 134 Ind. 681; *Storms* v. *Lemon*, 7 Ind. App. 435; *Lake Shore, etc., R. Co.* v. *McIntosh*, 140 Ind. 261; *Taylor* v. *McGrath*, 9 Ind. App. 30.

A witness, who was the playmate and schoolmate of appellee, lived near, and saw her nearly every day, was asked what complaint, if any, appellee ever made of any suffering at the time appellee was talking to witness, at any of the times during the past two years. Objection was made that the question asked for the opinion of the witness and not for what was stated by appellee or the expression of appellee as to present pain. The objection was overruled and the witness answered that "she complained about her head, that she was not feeling well." A motion to strike out the answer because it is an opinion and did not state what appellee said as to present pain was overruled.

The words, what complaint, used in the question, were

doubtless understood by the witness to mean, what expression of pain. The answer indicates that. If the answer of the witness is held to be an expression of pain and suffering made by the injured person at the time of the pain and suffering, and that seems to be its meaning, although made after the date of the injury, it was competent. Such expressions are received to show the extent of latent injuries on the ground that such injuries can not be shown in any other mode except by expressions as to their effect. *Chicago, etc., R. Co.* v. *Spilker*, 134 Ind. 380; *Board, etc.,* v. *Leggett*, 115 Ind. 544; *Board, etc.,* v. *Nichols*, 139 Ind. 611; *Anderson* v. *Citizens St. R. Co.*, 12 Ind. App. 194. In the next question the witness was asked, what, if anything, appellee said about having pains in her head when she was talking to witness, and she answered that appellee said her head hurt her.

Complaint is made of the refusal of the court to permit two witnesses to testify that appellant's general reputation for peace and quiet was good. There was no error in excluding this testimony. *Gebhart* v. *Burkett*, 57 Ind. 378, 26 Am. Rep. 61; *Elliott* v. *Russell*, 92 Ind. 526; *Sturgeon* v. *Sturgeon*, 4 Ind. App. 232.

The court excluded certain offered testimony of a witness to the effect that it was the general repute in the neighborhood that the weakness of appellee's eyes was caused from measles; also by the same witness that appellee's mother had told witness that appellee's eyes were weak from measles; also the offered testimony of a witness that appellee's mother told witness in the presence of appellee, then two years old, that appellee had the measles and that it had caused her eyes to become weak. As to part of this offered testimony, counsel for appellant have given no sufficient reason why it should be excepted from the general rule excluding hearsay evidence. What appellee's mother told the witnesses was certainly properly excluded.

It is true that hearsay evidence is admissible in certain

Treschman *v.* Treschman.

cases. But it is admitted only through necessity, as to prove pedigree, age, place of birth and the like. But it is not admissible to prove the existence of a physical fact. Whether or not appellee's eyes were weak from some prior disease could be established by positive testimony.

A witness, appellant's son, lived with the family after his mother's marriage and until she and her husband separated. He took his meals and slept there. He was asked by appellant's counsel, what, if anything, he had heard said in the family between April and September, 1897, about his mother having trouble with appellee and striking her head against the brick wall; and what, if anything, he had heard said during the same period by any member of the family, in the presence of appellee, with reference to the same matter; and also if he had ever heard the matter of his mother's striking appellee's head against the brick wall discussed by the family. He was also asked what, if anything, he ever heard appellee say about appellant taking her by the ears and beating her head against the brick wall. Objections to these several questions having been sustained, appellant offered to prove by the witness that nothing was said by any one at any time about any of the matters inquired about in the questions.

These questions are not directed to the testimony introduced by appellee as to her complaints of sickness or suffering. The questions and the offers to prove show this. Nor do they present the question that the silence of a party, where facts are asserted in his presence, may be shown against him if the facts or circumstances are such that he is required to speak. There was nothing obligatory upon appellee to discuss the fact of the trouble between herself and her stepmother with the witness, or with other persons in his presence. Counsel in their brief say, "The question was the non-existence of the facts testified to by witnesses for appellee, and naturally called for testimony of a negative character." All the questions, except the last, were as to

the discussion by members of the family, or others, of the fact of the alleged assault and battery. Counsel for appellant have not directed our attention to any testimony introduced by appellee that the fact of the alleged assault and battery was ever discussed in the family during the time mentioned in the presence of either of the parties. It is true the court permitted the father to testify on behalf of appellee that he told his daughters of the trouble. But, as we have already seen, the father did not relate what he told the daughters, he simply testified that he told them of the trouble. That testimony of his was not competent to establish the fact of the assault and battery, but was competent, as we have said, for another purpose. It is also true that appellee testified that when her sisters came home on the day of the occurrence they were told by her or her father as to what had occurred, but no objection was made to this evidence. Whether there had been a discussion of the alleged assault and battery among members of the family was not an essential element of appellee's case, but the essential elements were whether an assault and battery was committed producing the injuries charged, and these elements would not have been negatived by the proposed answers of the witness. As to the last question, whether the witness had ever heard appellee say anything about appellant injuring her, we fail to see how appellant was harmed by refusing to permit the witness to say he had never heard her say anything. She was not required to say anything about it to him or anyone else in his presence. She had the right to remain silent and her reasons for doing so would not be a proper subject of inquiry. As these several questions and offers to prove did not tend to negative any disputed fact essential to appellee's cause of action, we fail to see any error in the court's rulings.

Complaint is made of the court's refusal, upon request, to instruct the jury to the effect that if, at the time of the injuries, appellee was a minor and lived in the house with her

father and appellant as a member of the family, and as such received care and support from them, appellant, as appellee's stepmother, was entitled to the protection the law gives the parent in the reasonable chastisement of the child.

As the complaint discloses the relation of parent and child it was necessary that it should show that the punishment inflicted was unreasonable and excessive, because, with that relation disclosed the infliction of reasonable punishment could not be actionable. To this complaint appellant filed only the general denial. Counsel for appellee argue that the instructions were not proper because appellant had not pleaded the relation of parent and child in justification. But it is unnecessary to decide whether such a plea is necessary where the complaint itself discloses the relation, because in this case there is no evidence making the instructions applicable. Appellant in her testimony does not claim that she punished the child in a proper manner, but she positively denies having inflicted any punishment whatever upon appellee. Instead of the evidence on her part showing or tending to show that she punished the child, as a parent has the right to do, she denies that any punishment whatever was inflicted.

Appellant requested the following instruction: "If you find from the evidence that the plaintiff was diseased at and before the punishment complained of, and that her present condition is attributable to such former diseased condition, and not in any manner or part attributable to such punishment, then you must find for the defendant. If you find that the plaintiff was diseased at and before the punishment she received, if any, but that by the punishment her disease has been aggravated or intensified, then you will give her damages for just such injuries as she has sustained which were the result of the punishment."

The court modified this instruction by omitting the first sentence and giving it as modified. Appellant was entitled to the instruction as requested. *Louisville, etc., Co.* v.

*Jones,* 108 Ind. 551. But the court told the jury in another instruction that appellee must show by a preponderance of the evidence that as the direct result of the punishment complained of appellee was injured in some of the respects alleged, and that if this was not shown by a preponderance of the evidence their verdict should be for appellant. And in another instruction the jury were told that if they found for the appellee they should award her compensation for the injuries "sustained by her as the direct result of the alleged wrongful acts of the defendant."

It is also argued that as the court undertook to instruct the jury as to the *quantum* of proof required to sustain appellee's complaint, it should, as a part of the instructions, also have instructed the jury upon the presumption of appellant's innocence, so that the jury might weigh this in connection with the other proof, in determining the preponderance. In the instructions given the court correctly enumerated the elements in appellee's case which must be shown by a preponderance of the evidence, and that if the jury found that any one of these elements had not been established by a preponderance of the evidence their verdict should be for appellant. In the instructions given no mention is made of the presumption of appellant's innocence, and no instruction upon that question was requested by appellant. The instructions given were sufficient as against a party not asking further instruction. *Spurlin* v. *State ex rel.,* 20 Ind. App. 342.

The eighth instruction given by the court reads: "Some evidence has been introduced for the purpose of impeaching the testimony of certain witnesses who have testified before you, by attempting to show that such witnesses have made statements out of court in conflict with their testimony in this case. The court instructs you that a witness may be impeached in this manner, but as to whether any witness in this case has been successfully impeached in this mode, and if he has been so impeached, the extent to which this has

Treschman *v.* Treschman.

been done, are questions of which you are the exclusive judges."

It is argued, as the parties to the suit were among the witnesses against whom evidence was introduced to show that they had made statements out of court in conflict with their testimony, that as to appellee the effect of the instruction was to limit proof of such statements made by her to the sole purpose of impeachment.

It is true that statements made by a party out of court in contradiction of statements made as a witness are competent as original evidence; but the instruction in question does not designate any witness or class of witnesses, but applies to all on both sides affected by it. It seems that a jury of average intelligence must have understood that this instruction was intended to inform them as to the law on the subject of the impeachment of witnesses and for that purpose only. See, *Lynch* v. *Bates*, 139 Ind. 206; *Smith* v. *State*, 142 Ind. 288.

Instruction four and one-half given by the court is almost identical with an instruction approved in *Lynch* v. *Bates*, 139 Ind. 206, 209. The instruction here uses the word "may" instead of "should", as was suggested in the above case.

Complaint is made of the eleventh instruction: "A person's reputation for truth is made by what his neighbors generally say of him in this regard. If they generally say he is untruthful, that makes his general reputation for truth bad. Upon the other hand, if a man's neighbors say nothing whatever about him as to his truthfulness, that fact of itself is evidence that his general reputation for truth is good." It is argued that the last clause of this instruction invades the province of the jury. But it is unnecessary to argue the question, as this same instruction was approved in the case of *Davis* v. *Foster*, 68 Ind. 238. See, also, *Conrad* v. *State*, 132 Ind. 254.

The third and fourth assignments of error are: "3. The

court erred in refusing to allow appellant to file the affidavit of William R. Wood, in support of her motion for a new trial, in support of her amendment to her motion for a new trial, and in explanation of appellant's absence at the hearing of her motion for a new trial." "4. The court erred in striking out appellant's own affidavit in support of her motion for a new trial, and in support of her amendment to her motion for a new trial."

The ground, here in question, for a new trial was misconduct of the jury in making a quotient verdict. In support of this appellant filed her affidavit and a day was fixed for hearing. Upon the day fixed appellee objected to proceeding with the hearing in the absence of appellant and filed certain affidavits and introduced certain oral testimony tending to show efforts made to secure appellant's attendance. The court postponed the hearing and fixed the day for hearing five days thereafter and entered an order that appellant appear on that day to be examined touching the matters set forth in her affidavit. Afterwards, on the day fixed, appellant failing to appear, her attorneys offered to file the affidavit of William R. Wood, one of appellant's attorneys, in explanation of appellant's absence and also in further support of the ground for a new trial. Objection was made to filing this affidavit which was sustained. Upon appellee's motion appellant's affidavit in support of the motion for a new trial was then stricken out, and the motion for a new trial overruled.

Counsel have discussed at some length the rulings of the court in refusing to allow appellant to file the affidavit of Mr. Wood, and in striking out appellant's affidavit. But under the rule declared by the Supreme Court, it is unnecessary to enter upon a discussion of these questions, because, if appellant's affidavit had remained on file and the affidavit of Mr. Wood had been filed, the result must have been the same. The misconduct of the jury charged, is misconduct of the jury while in the jury room. The affi-

davit of Mr. Wood was to the effect that the contents of appellant's affidavit filed in support of her motion for a new trial were true. Appellant's affidavit simply sets forth the manner in which the jury reached its verdict in the jury room, but fails to disclose affiant's source of information. It is expressly held in *Hutchins* v. *State*, 151 Ind. 667, that such an affidavit furnishes no legal proof of the alleged misconduct; following *Stanley* v. *Sutherland*, 54 Ind. 339, and overruling *Houk* v. *Allen*, 126 Ind. 568, 11 L. R. A. 706, and *Chicago, etc., R. Co.* v. *McDaniel*, 134 Ind. 166. It is true the affidavit in the Hutchins case was made on information and belief, and the affidavit here in question is silent as to the source of affiant's belief, but in the above case it is held that it is unimportant.

Judgment affirmed.