**Richard D. COOLEY, as Guardian Over Richard W. Cooley, Appellant–Plaintiff,**

v.

**Judy (Cooley) HOSIER, Appellee– Defendant.**

**No. 85A04–9508–CV–304.**

Court of Appeals of Indiana.

Jan. 10, 1996.

Transfer Denied May 22, 1996.

Alfred H. Plummer, III, Wabash, for Appellant.

John Johnston, Johnston, Lehman & Guenin, Wabash, for Appellee.

## OPINION

FRIEDLANDER, Judge.

Richard D. Cooley appeals the trial court's order of summary judgment entered in favor of Judy (Cooley) Hosier when it was determined that their minor child, Richard, was precluded from maintaining an action for negligence against Hosier as a custodial parent.

We affirm.

The facts most favorable to Cooley, the nonmoving party, are that on July 20, 1989, the marriage between Hosier and Cooley was dissolved. The decree awarded joint custody of Richard, born August 9, 1987, to both parties. The custody order provided in relevant part as follows:

"1. That the parties have as the fruits of their marriage, one (1) minor child, namely Richard W. Cooley born on August 9, 1987. That the custody of said minor child shall be joint with the father having physical custody of the child during the mother's working hours until 1:00 o'clock p.m. the following day and the mother having the physical custody of the minor child during the father's working hours. The parties shall alternate weekends with the physical custody of the minor child beginning Saturday mornings at 8:00 o'clock a.m. until

the following Monday at 1:00 p.m. The parties may, if they so desire or the hours of work are modified, change the actual physical custody of the minor child by agreement from time to time. Since the parties will have equal time with the child and it is assumed that both parties will contribute to the child's maintenance, there shall be no support from either party. . . ."

*Record* at 19.

Subsequent to the dissolution, Cooley permitted Hosier to move back into his residence upon the condition that Hosier would care for their child while Cooley was at work. Cooley also requested that Hosier "remove all items that may cause harm from the reach" of the child. *Record* at 32. On September 1, 1989, Richard ingested some drain cleaner resulting in substantial injury. When the incident occurred, Cooley was at work and Hosier was at home with Richard.

On September 1, 1994, Cooley, as Richard's guardian, filed an action against Hosier alleging that she negligently permitted Richard to have access to the bottle of drain cleaner he ingested. Hosier filed a motion for summary judgment which the trial court granted on May 11, 1995. The order and accompanying memorandum provided as follows:

### "SUMMARY JUDGMENT

This cause is before the Court upon the Complaint of the plaintiff and the Motion for Summary Judgment in response thereto of the defendant. Now the Court being advised, hereby rules as follows:

1. Defendant's Motion for Summary Judgment is hereby GRANTED.

2. The Court finds that plaintiff take nothing by his complaint and that he be responsible for the costs of the action. SO ORDERED this 11 day of May, 1995.

. . . . .

### MEMORANDUM

The underlying factual matters of this case are tragic but relatively simple. Judy and Richard Cooley were divorced on July 20, 1989. Custody of their minor child Richard, age 2, was joint by agreement of the two parents. Under terms of the decree, Judy was to have physical custody of Richard during the father Richard's working hours. There is uncontested evidence that the father requested that Judy remove all items that could cause him harm from where the child could reach them. On September 1, 1989, while the father was at work and Judy was supervising the child, the child drank drain cleaner, suffering serious and permanent injuries for which he here seeks redress. Immediately following this incident, the father sought a modification of the custody order and was appointed the sole custodian of the child with Judy receiving visitation rights only under controlled circumstances.

The case is a simple and straight forward questioning of Indiana's parental immunity doctrine. That rule was last considered by the Indiana Supreme Court in *Barnes v. Barnes,* 603 N.E. 2nd, 1337 (Ind. 1992). In that case, Justice Dickson's multi-page discussion of parental immunity concluded by not abrogating parental immunity in Indiana but instead finding that an intentional and malicious act, in *Barnes* an intentional felonious act, was not barred by the parental immunity doctrine.

This Court's review of that discussion and court consideration leaves this Court convinced that the Indiana Supreme Court did not contemplate a complete abrogation of the parental immunity doctrine at that time. To have done so would have been easy enough. Instead, the Court thoughtfully indicated numerous circumstances in which parental immunity may continue to serve public policy issues. Specifically reserved within the parental immunity doctrine were acts of negligent supervision, the very act with which Judy Cooley Hosier is here charged. To date, parental immunity continues to be a complete defense to this claim. It is this Court's estimate, based upon reading the Supreme Court holding in *Barnes* that the parental immunity doctrine continues to survive as to issues of negligent supervision of children.

The plaintiff offers an alternative doctrine for recovery, namely a suggestion

that joint custody wasn't truly custody under these circumstances but instead could be likened to a visitation. The Court believes that joint custody actually has legal meaning in Indiana and that both parents were custodians of this child at the time of the occurrence. This Court rejects out of hand the suggestion that joint custody does not count as custody within the meaning of the cases arising under *Buffalo v. Buffalo,* 441 N.E. 2nd 711 ( [Ind.App.] 1982). See I.C. 31–1–11.5–21(f) and (g) for the joint custody statutes, first adopted in 1983.

The Court finds this case to be a sad event but that Indiana law does not allow for recovery by the child against the then custodial parent for this act of negligence."

*Record* at 37–39.

Cooley appeals and presents the following issue:

Did the trial court properly grant Hosier's summary judgment motion?

■ Upon appellate review of summary judgment, this court views the same matters and issues that were before the trial court and follows the same process. *Inland Steel v. Pequignot* (1993), Ind.App., 608 N.E.2d 1378, *trans. denied.* Summary judgment is appropriate when the evidence designated to the trial court demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Ind.Rules of Procedure, Trial Rule 56(C). Once the movant establishes that no genuine issue of material fact exists, the party opposing summary judgment must set forth specific facts indicating that there is a genuine issue in dispute. If the nonmoving party fails to meet this burden, summary judgment in favor of the moving party is appropriate. *Pierce v. Bank One–Franklin, NA* (1993), Ind.App., 618 N.E.2d 16, *trans. denied.* A trial court's grant of summary judgment is clothed with a presumption of validity. *Rosi v. Business Furniture Corp.* (1993), Ind., 615 N.E.2d 431.

■ The party moving for summary judgment must designate to the trial court all parts of the material included in the record that it relies upon in support of the motion.

The opposing party must also designate to the trial court "each material issue of fact which that party asserts precludes entry of summary judgment and the evidence relevant thereto." T.R. 56(C). Any doubt as to the existence of a factual issue should be resolved against the moving party, construing all properly asserted facts and reasonable inferences in favor of the nonmovant. *Cowe v. Forum Group, Inc.* (1991), Ind., 575 N.E.2d 630; *Bridgewater v. Economy Eng'g Co.* (1985), Ind., 486 N.E.2d 484.

■ Courts in this state have traditionally recognized that parents enjoy immunity from tort liability in actions brought against them by their unemancipated minor children. *See Barnes v. Barnes* (1992), Ind., 603 N.E.2d 1337; *Vaughan v. Vaughan* (1974), 161 Ind. App., 497, 316 N.E.2d 455; *Smith v. Smith* (1924), 81 Ind.App. 566, 142 N.E. 128. In *Vaughan,* this court determined that parent-child immunity barred a child's claim against his parents for negligent supervision when the child was struck by a falling tombstone while visiting a cemetery with his parents. In affirming the trial court's judgment in favor of the parents, this court explained the reason for the rule that a parent is immune from suit for injuries sustained by his unemancipated minor child:

"From our knowledge of the social life of today, and the tendencies of the unrestrained youth of this generation, there appears to be much reason for the continuance of parental control during the child's minority, and that such control should not be embarrassed by conferring upon the child a right to civil redress against the parent, under the circumstances stated in the question we are now considering. In our opinion, much reason now exists for maintaining the sound public policy, which, as stated, underlies the rule which denies such redress."

*Vaughan, supra,* 316 N.E.2d at 457, (quoting *Smith, supra,* at 570, 142 N.E. at 129). *Vaughan* then observed that "the [*Smith*] court does continue that under extreme circumstances the immunity may not exist, *however, a failure to supervise, as in this case, would not be sufficient, in our opinion to qualify. Id.*

Cooley acknowledges that our supreme court has recognized that the doctrine of parental tort immunity does not apply to preclude actions involving felonious conduct. *See, e.g., Fager v. Hundt* (1993), Ind., 610 N.E.2d 246 (sexual abuse); *Barnes, supra* (rape). He then points to *Buffalo v. Buffalo* (1982), Ind.App., 441 N.E.2d 711, for the proposition that this court has carved yet another exception to the absolute immunity doctrine which should allow recovery in this action. In *Buffalo*, we determined that an unemancipated child and his custodial mother were permitted to maintain an action against the non-custodial father for injuries the child sustained when he was bitten by the father's dog. In *Buffalo*, the marriage had been dissolved three years prior to the child's injury. While we explained that parents must be free to discipline and control their children without the fear of being sued, it was observed that:

"In this case, ... the marriage of Chad's parents had been dissolved for some time. [When] the [m]other was granted custody of Chad, a new family unit consisting of mother and Chad had been formed. Mother is now responsible for Chad's control and upbringing. The reasons underlying the parental immunity rule apply to her but cannot reasonably be said to apply to the father. The peace and tranquility of this marriage had been broken irretrievably before Chad was injured. There is no longer any reason for the enforcement of the immunity rule for the father's benefit."

*Id.* at 713.

█ Unlike *Buffalo* where the claim was brought against a noncustodial parent, Cooley and Hosier were given joint custody of their child. In accordance with Ind.Code 31–1–11.5–21(f), an award of joint legal custody "means that the persons awarded joint custody will share authority and responsibility for the major decisions concerning the child's upbringing, including the child's education, health care, and religious training." The responsibilities of a parent with joint custody are no different from those of a parent with sole custody. The sharing of certain responsibilities with the other parent is not unlike the sharing that occurred during the marriage, i.e., a period during which both parents enjoyed immunity.

While the marriage between Cooley and Hosier had been dissolved, the original "family unit" was reestablished when the parties again began living together. In *Buffalo*, the parents were still living apart and this court determined that the father was no longer responsible for the primary care and supervision of the child because he had not been awarded custody. The familial relationship in *Buffalo* had ceased to exist, so far as the child's father was concerned. The *Buffalo* court also determined that the father's right of visitation was not the equivalent of custody and recognized that it was the custodial parent who exercised primary parental control and supplied the necessities of life for the child.

The award of joint custody to Hosier and Cooley rendered them equally responsible for providing life's daily necessities as well as continuous security and affection to Richard. Both Cooley and Hosier were obliged to exercise control, discipline, and responsibility over their child. No evidence was presented here demonstrating that the right of discipline and family association had been surrendered.

█ In light of the narrow exceptions to the parental immunity doctrine adopted by our supreme court, that rule continues to survive with respect to the issue of a custodial parent's negligent supervision of his or her child. While we are sympathetic to the plight of the parties, Indiana law precludes Richard from recovering against his mother under these circumstances. The trial court properly granted Hosier's motion for summary judgment.

Judgment affirmed.

KIRSCH, J., concurs.

SULLIVAN, J., concurs in result.