**C.M.L., by his mother and natural guardian Karen E. BRABANT, and Karen E. Brabant, individually, Appellants–Plaintiffs,**

v.

**REPUBLIC SERVICES, INC., d/b/a Lee's Hauling and Trash Removal, and Kenneth Brabant, Appellees–Defendants.**

No. 78A01–0303–CV–99.

Court of Appeals of Indiana.

Dec. 16, 2003.

---

David W. Craig, Scott A. Faultless, Craig Kelley & Faultless, Indianapolis, IN, Attorneys for Appellants.

Mark J. Roberts, Julia Blackwell Gelinas, Lucy R. Dollens, Locke Reynolds LLP, Indianapolis, IN, Attorneys for Appellees.

## OPINION

VAIDIK, Judge.

### Case Summary

C.M.L. appeals the trial court's grant of summary judgment to Republic Services, Inc. ("Republic") and Kenneth Brabant ("Kenneth"). Specifically, C.M.L. challenges the trial court's determinations that C.M.L.'s cause of action was barred by the parental immunity doctrine and the Indiana Guest Statute. For the reasons stated herein, we decline to extend the parental immunity doctrine to apply to stepparents or to bar claims arising out of business activities. In addition, we find that the Guest Statute does not bar the action. Consequently, we reverse.[1]

### Facts and Procedural History

In July 2001, nine-year-old C.M.L. accompanied Kenneth on his garbage collection route for Republic. During the route, C.M.L. was asleep under a blanket on the passenger seat. On one particular stop, Kenneth exited the truck to collect some garbage. Unbeknownst to Kenneth, C.M.L. also exited the truck, stood on the

---

1. We hereby deny Appellant's Motion for Oral Argument.

ground between the hydraulic tank and the truck cab, and urinated. When Kenneth returned, he assumed C.M.L. was still asleep under the blanket and pulled the truck forward to the next stop. At this point, Kenneth suddenly realized C.M.L. was not under the blanket and had been struck by the truck. C.M.L. suffered serious injuries as a result of being hit by the truck.

Kenneth and Karen Brabant ("Karen"), C.M.L.'s mother, have been married since 1995 and were married at the time of the accident. Kenneth is not the biological father of C.M.L. nor has he adopted C.M.L.; however, C.M.L. considers Kenneth to be his father. At the time of the accident, Kenneth financially supported C.M.L. and provided him with health insurance.

In May 2002, C.M.L., by Karen, filed a complaint against Republic and Kenneth, alleging negligence. In August 2002, Republic and Kenneth filed for summary judgment, arguing that the parental immunity doctrine and the Indiana Guest Statute barred C.M.L.'s claim. In September 2002, Kenneth and Karen separated and began living apart; however, Karen stated that the separation had nothing to do with the pending lawsuit. Following the separation, Kenneth no longer financially supported C.M.L. Thereafter, in December 2002, C.M.L. filed a cross-motion for summary judgment on the same issues as the motion filed by Republic and Kenneth. The trial court held a hearing and subsequently granted summary judgment in favor of Republic and Kenneth, finding that the parental immunity doctrine and the Indiana Guest statute barred C.M.L.'s negligence action. C.M.L. now appeals.

## Discussion and Decision

C.M.L. argues that the trial court erred by granting summary judgment in favor of Republic and Kenneth. In particular, C.M.L. argues that his claim is not barred by the parental immunity doctrine or by the Indiana Guest Statute. When reviewing the grant or denial of summary judgment, this Court applies the same legal standard as a trial court: summary judgment is appropriate where no designated genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Munsell v. Hambright*, 776 N.E.2d 1272, 1278 (Ind.Ct.App. 2002), *trans. denied.* The standard of review is not altered by cross motions for summary judgment on the same issues. *Id.* A party appealing the denial of summary judgment carries the burden of persuading this Court that the trial court's decision was erroneous. *Id.* Moreover, when the material facts are not in dispute, our review is limited to determining whether the trial court correctly applied the law to the undisputed facts; and, if the issue presented is purely a question of law, we review the matter de novo. *Am. Family Ins. Co. v. Globe Am. Cas. Co.*, 774 N.E.2d 932, 935 (Ind.Ct.App.2002), *trans. denied.* In addition, our standard of review is not changed by the trial court's entry of findings of fact and conclusions thereon. *Merrill v. Knauf Fiber Glass GmbH*, 771 N.E.2d 1258, 1264 (Ind.Ct.App. 2002), *trans. denied.* Although the findings and conclusions provide valuable insight into the trial court's decision, they are not binding upon this Court. *Id.*

### I. Parental Immunity Doctrine

C.M.L. first argues that the trial court erred by granting summary judgment in favor of Republic and Kenneth on the basis of the parental immunity doctrine. Before we determine whether parental immunity bars C.M.L.'s claim, we first review the history of the parental immunity doctrine in Indiana.

## A. History of the Parental Immunity Doctrine

The immunity between parent and child did not exist at common law. *Restatement (Second) of Torts: Parent & Child* § 895G(b) (1979). In the United States, the concept of parental immunity originated in *Hewlett v. George,* 68 Miss. 703, 9 So. 885 (1891), *abrogated by Glaskox v. Glaskox,* 614 So.2d 906 (Miss.1992). In *Hewlett,* the court held that even though a person wrongfully confined in an insane asylum has the general right to sue for damages, a child may not sue a parent for such damages. *Id.* at 887. Specifically, the court found:

> [S]o long as the parent is under obligation to care for, guide, and control, and the child is under reciprocal obligation to aid and comfort and obey, no such action as this can be maintained. The peace of society, and of the families composing society, and a sound public policy, designed to subserve the repose of families and the best interests of society, forbid to the minor child a right to appear in court in the assertion of a claim to civil redress for personal injuries suffered at the hands of the parent. The state, through its criminal laws, will give the minor child protection from parental violence and wrong-doing, and this is all the child can be heard to demand.

*Id.*

The first Indiana case to consider the parental immunity doctrine was *Treschman v. Treschman,* 28 Ind.App. 206, 61 N.E. 961 (1901). In *Treschman,* a stepmother severely injured her minor stepdaughter by repeatedly banging the child's head intentionally against a brick wall. The stepdaughter then sued her stepmother for damages. After trial, the jury returned a verdict for the stepdaughter. The stepmother appealed, arguing that the suit should be barred by the doctrine of parental immunity. On appeal, this Court explained:

> That a stepfather or a stepmother stands *in loco parentis* to an infant child is true, in a limited sense. A person cannot be said to occupy that relation unless he is invested with the rights and charged with the duties of a parent. A father is legally bound to support his child, but he is not legally bound to support a stepchild. He may lawfully decline to receive the children of his wife by a prior marriage into his family. He may voluntarily assume such a relation to stepchildren that the doctrine as to compensation for services and necessities will be the same as with reference to his natural children. But his marriage to the mother of infant children does not of itself place him *in loco parentis* to such children.

*Treschman,* 61 N.E. at 962. The Court also indicated that when the suit was filed the father and stepmother had been living apart and that the stepmother's acts were grievous and malicious. *Id.* at 963. In the end, the Court held that the intentional act of a stepmother against her stepchild was not barred by parental immunity and affirmed the jury verdict. *Id.* at 963, 966.

Notwithstanding *Treschman,* parental immunity was held to bar claims based on the intentional and negligent acts of a biological parent against a child in *Smith v. Smith,* 81 Ind.App. 566, 142 N.E. 128 (1924). In *Smith,* a son sued his father for acts of personal violence and for negligently failing to send him to school for an education. The father demurred, and judgment was entered against the son. On appeal, the son argued that he should be allowed to sue his father. In determining that he did not have such a right, the Court cited to the policy argument put forth in *Hewlett,* which stated:

It is well established that a minor child cannot sue his parent for a tort. The peace of society, and of the families composing society, and a sound public policy, designed to subserve the repose of families and the best interests of society, forbid to the minor child a right to appear in court in the assertion of a claim to civil redress for personal injuries suffered at the hands of the parent.

*Smith,* 142 N.E. at 128. It also distinguished *Treschman,* finding that in that case:

the one charged with the tortious acts was the stepmother of the minor involved, and no showing appears that she stood *in loco parentis* to such minor at the time of the infliction of the injury on which the action is based. . . . True, the opinion in that case contains a discussion, which appears to indicate that a minor child, under certain extreme circumstances, might maintain an action against its parent for damages arising from the infliction of personal injuries, but so much of the opinion as appears to so hold is purely obiter dictum, as no such question was involved in that action.

*Id.* at 128–29.

The notion that the parental immunity doctrine precluded recovery by a child against a parent for negligent actions was reaffirmed in *Vaughan v. Vaughan,* 161 Ind.App. 497, 316 N.E.2d 455 (1974). There, a boy was injured while visiting a cemetery with his parents. The boy's grandfather sued the parents on the boy's behalf, arguing that the parents were negligent in their supervision. The parents moved to dismiss based on parental immunity, and the trial court granted the motion. The injured child asked the court to abrogate the parental immunity doctrine and to overrule *Smith.* On appeal, this Court refused to abrogate parental immunity and found that *Smith* remained valid and binding law. *Vaughan,* 316 N.E.2d at 457. In particular, this Court recognized the "ageless observation" first announced in *Smith:*

From our knowledge of the social life of today, and the tendencies of the unrestrained youth of this generation, there appears to be much reason for the continuance of parental control during the child's minority, and that such control should not be embarrassed by conferring upon the child a right to civil redress against the parent. . . .

*Id.* (quoting *Smith,* 142 N.E. at 129). We also noted that "under extreme circumstances [parental] immunity may not exist, however, a failure to supervise . . . would not be sufficient, in our opinion to qualify." *Id.*

Although parental immunity protected a parent for negligent actions against a child, *Buffalo v. Buffalo,* 441 N.E.2d 711 (Ind.Ct.App.1982), limited the doctrine by not affording its protection to a non-custodial, biological father. In that case, the parents of an unemancipated minor child were divorced. The mother was given sole physical custody, and the father had rights to reasonable visitation and was ordered to pay child support. One day, while the child was visiting his father, the father's dog bit the child, causing injury. Thereafter, the child sued the father, and the trial court dismissed the action based on parental immunity. The child appealed, arguing that "the doctrine of parent-child immunity does not preclude a suit for negligent injury by an unemancipated minor child against a non-custodial parent where the marriage of the child's parents was dissolved prior to the child's injury." *Id.* at 712. We agreed and reversed. *Id.* at 712, 714. In so deciding, this Court explained that the public policy behind parental immunity—namely, to promote "the domestic

peace and tranquility of the family"—was not applicable to these facts because the "peace and tranquility of this marriage had been broken irretrievably before [the child] was injured." *Id.* at 712–13.

Surprisingly, our supreme court had not spoken on the application of the parental immunity doctrine in Indiana until *Barnes v. Barnes,* 603 N.E.2d 1337 (Ind.1992). *Barnes* determined, notwithstanding *Smith,* that there is no parental immunity for intentional, felonious acts committed by a parent against a child. There, the seventeen-year-old biological daughter of John Barnes alleged that he had raped her when she was fifteen and sued him for damages. At the time she filed her complaint, her parents' marriage dissolution had been final for over three months. After a jury trial, the daughter was awarded significant damages. Barnes appealed, and another panel of this Court reversed and ordered dismissal based on parental immunity. The daughter sought and was granted transfer. In arriving at its decision, the supreme court explained that the parental immunity doctrine was in a state of flux in American jurisprudence. *Id.* at 1340. The Court looked to principles articulated in *Treschman* and *Vaughan* to support the proposition that parental immunity should not be absolute. *Id.* at 1342. In the end, the Court found that the case did not present an opportunity to abrogate parental immunity; rather, it found that existing Indiana case law on the parental immunity doctrine directed that where intentional felonious conduct had been averred, the doctrine did not preclude the action. *Id.* at 1341–42.

This Court recently applied the parental immunity doctrine to bar an action that alleged negligent acts by a joint custodial parent against a child. In *Cooley v. Hosier,* 659 N.E.2d 1127 (Ind.Ct.App.1996), *trans. denied,* divorced parents shared joint physical custody of their son. After the dissolution was final, the parents moved back in together. One day while the mother was at home with the son, he ingested drain cleaner and was injured. The father, on behalf of the son, sued mother for damages, alleging negligent supervision. The mother then moved for and was granted summary judgment on the basis of parental immunity. On appeal, another panel of this Court affirmed and found that "[c]ourts in this state have traditionally recognized that parents enjoy immunity from tort liability in actions brought against them by their unemancipated minor children." *Id.* at 1130 (citing *Barnes, Vaughan,* and *Smith* ). In addition, the panel distinguished *Buffalo* where the claim was brought against a non-custodial parent and the family unit had been broken already; whereas, in *Cooley,* the claim was against a parent with joint physical custody and the family unit had been reestablished when the parents began living together again. *Id.* at 1131. Moreover, the Court focused on the joint custody situation and stated that it "rendered [the parents] equally responsible for providing life's daily necessities as well as continuous security and affection to [the child]. Both [parents] were obliged to exercise control, discipline, and responsibility over their child." *Id.*

Based on the above cases, it is apparent that the parental immunity doctrine has not been abrogated in Indiana and still has limited application.[2] Intentional acts committed by a biological parent as well as

---

2. We note that the parental immunity doctrine has received constant criticism, leading to its erosion by the development of numerous exceptions in many jurisdictions. *Restatement (Second) of Torts* § 895G(d). There are now very few jurisdictions, if any, in which the doctrine exists in a complete form. *Id.*

negligent acts of a non-custodial parent without joint custody are not afforded protection under parental immunity. However, the doctrine still bars claims based on the negligent acts committed by a custodial parent or by a non-custodial parent with joint custody.

## B. Application of the Doctrine

We are now being asked to decide for the first time whether parental immunity bars an action brought by a stepchild against a stepparent for negligent supervision occurring during the course of the stepparent's business activities. Based on two independent grounds, as explained below, we find that parental immunity does not bar such an action.

### 1. *Stepparent v. Parent*

C.M.L. urges us not to extend the parental immunity doctrine to include stepparents. In support of his argument, C.M.L. notes that no Indiana case dealing with parental immunity has ever applied the doctrine to bar a claim against a stepparent. The only Indiana case we can find that addressed parental immunity as relating to a stepparent is *Treschman,* where the stepparent repeatedly thrust the stepchild's head against the wall, causing serious bodily injury. However, in *Treschman,* the fact that the tortfeasor was the stepparent was not the sole reason that the parental immunity doctrine did not apply. In addition, the Court noted that this was an intentional act and that the parents were separated when the suit was filed. *Treschman,* 61 N.E. at 963. Thus, we cannot solely rely on *Treschman* for the proposition that parental immunity does not apply to stepparents.

Nevertheless, we agree that parental immunity should not apply to a stepparent. It is a basic tenet in our state that parents have a legal obligation to support their dependent children. *Levin*

*v. Levin,* 626 N.E.2d 527, 532 (Ind.Ct.App. 1993), *summarily aff'd by* 645 N.E.2d 601 (Ind.1994). In addition, parents are equally responsible to provide for a child's daily necessities and are obligated to exercise control, discipline, and responsibility over the child. *Cooley,* 659 N.E.2d at 1131. Because of these parental obligations, it makes sense to provide a parent who bears such a duty with immunity for harms occurring while reasonably exercising that duty. Moreover, merely because a parent is immune from tort liability does not mean a parent escapes the financial obligation to continue to support a child. *See* Ind.Code ch. 31–16–6 (child support orders). On the other hand, under Indiana law, a stepparent has no legal obligation to support his stepchildren. *Patrick v. Patrick,* 517 N.E.2d 1234, 1237 (Ind.Ct.App. 1988); *see also Treschman,* 61 N.E. at 962 ("[a] father is legally bound to support his child, but he is not legally bound to support a stepchild"). Thus, where a stepparent is responsible for harming a stepchild, if this Court were to afford that stepparent the same immunity as a natural parent, that stepparent could avoid tort liability through the parental immunity doctrine as well as freely leave the harmed child to be supported by his biological parents. This outcome is unacceptable.

Republic and Kenneth counter that Kenneth freely provided for C.M.L.'s needs, and thus, he stood *in loco parentis* and assumed the responsibility of a parent without needing to adopt C.M.L. Consequently, the argument goes, he should be afforded the protection of parental immunity. In support of their argument, Republic and Kenneth direct our attention to *Sturrup v. Mahan,* 261 Ind. 463, 305 N.E.2d 877 (1974), *overruled on other grounds by Ind. High Sch. Athletic Ass'n v. Carlberg,* 694 N.E.2d 222 (Ind.1997),

*reh'g denied.*[3] In *Sturrup,* the supreme court found, based on the Indiana High School Athletic Association's (IHSAA) constitution and by-laws, that legal guardians were to be considered as parents when determining whether transfer students maintained athletic eligibility upon a change of "parental" residence. *Id.* at 881–82. The situation in *Sturrup* is quite different from the one presented here. First, this case deals with parental immunity, which was not at issue in *Sturrup.* Also, the supreme court in *Sturrup* was interpreting the IHSAA's constitution and by-laws to determine whether the IHSAA applied them correctly. We have no such language to interpret in this case. Therefore, we find *Sturrup* to be inapposite.[4]

■ Republic and Kenneth also cite to *Treschman* to support the claim that Kenneth should be granted immunity for having "voluntarily assume[d]" the obligations of a parent. *Treschman,* 61 N.E. at 962. We agree that a stepparent may voluntarily assume the obligations of a parent; but, in order to benefit from the parental immunity doctrine, a stepparent must take the formal step of becoming "invested with the rights and charged with the duties of a parent." *Id.* We find that this language means that a stepparent must take some

action, such as adopting a stepchild, in order to be protected by the parental immunity doctrine.[5] To the extent that other cases hold otherwise, we disagree. Indiana law does not require a stepparent to support a stepchild. *See* Ind.Code § 31–9–2–88 (defining "parent" for family and juvenile law purposes as the biological or adoptive parent). Consequently, we conclude that in order to benefit as a parent, one must assume the obligations of a parent. In this case, because Kenneth did not take the formal step of becoming "invested with the rights and charged with the duties of a parent," we find that Republic and Kenneth are not entitled to parental immunity.[6]

## 2. Business Activity

■ Parental immunity also does not extend to Kenneth because he was engaged in a business activity as an employee of Republic when this accident occurred. This is the first Indiana case to determine whether the parental immunity doctrine should apply where the child's injury occurred in an employment situation.

According to the *Restatement (Second) of Torts* § 895G(f):

---

3. Republic and Kenneth also cite to *Indiana High School Athletic Association v. Carlberg,* 694 N.E.2d 222 (Ind.1997), *reh'g denied;* however, they failed to provide a pinpoint citation, and we are unable to locate any related issue in the opinion. We will not search the authorities cited by a party in order to find legal support for its position. *Young v. Butts,* 685 N.E.2d 147, 151 (Ind.Ct. App.1997). Therefore, we only consider *Sturrup.*

4. There is further support for denying parental immunity to those who stand *in loco parentis* in *Restatement (Second) of Torts* § 895G(i).

5. Because we are not presented with a situation where Kenneth had been appointed the

legal guardian of C.M.L., we need not discuss whether this formal step would be sufficient to bestow a stepparent with parental immunity. *But see Doe v. Shults–Lewis Child & Family Servs., Inc.,* 718 N.E.2d 738, 745–46 (Ind. 1999) (stating that guardians are not protected under the parental immunity doctrine).

6. In addition, Republic and Kenneth argue that the public policy reason for the parental immunity doctrine is to promote peace in families; however, we are at a loss to see how family tranquility would be served by the additional injury of denying a harmed child access to the courts. *See, e.g., Sorensen v. Sorensen,* 369 Mass. 350, 339 N.E.2d 907 (1975).

208

Still another exception [to the parental immunity doctrine], recognized by several of the courts, is that there is no immunity for bodily harm inflicted by conduct that is merely negligent, if the harm is inflicted in the course of a business activity carried on by the defendant. The explanation usually given is that the parent has not injured his child while acting in his capacity as a parent but rather in his capacity of one conducting a business enterprise and that the enterprise should have no parental immunity. A factor of importance affecting this conclusion that sometimes has been mentioned is that business enterprises customarily carry liability insurance and that so far as the enterprise and the insurance are concerned the fact that the victim is a child of the insured is essentially irrelevant.

We agree with the reasoning of the Restatement. We find that Kenneth was not acting in his capacity as a stepparent when he struck C.M.L. with his truck; rather, he was acting in his capacity as a garbage collector. Because Kenneth was engaged in a business activity when he injured C.M.L., we conclude that the parental immunity doctrine would not bar C.M.L.'s claim against Kenneth.

Because Kenneth may not benefit from the doctrine of parental immunity, Republic may not benefit either. However, even supposing Kenneth were granted personal immunity as a parent under this scenario, we do not believe that Kenneth's immunity should bar C.M.L.'s claim against Republic. This is so because parental immunity is a personal immunity that does not extend to an employer or any other third party. *See Restatement (Second) of Torts* § 895G(h). Because C.M.L. was injured while Kenneth was performing business activities for Republic, neither Republic nor Kenneth is entitled to seek the protection of the parental immunity doctrine.

## II.  Guest Statute

C.M.L. also argues that the trial court erred by finding that the Indiana Guest Statute barred his complaint. The Guest Statute provides:

> The owner, operator, or person responsible for the operation of a motor vehicle is not liable for loss or damage arising from injuries to or the death of ... the person's child or stepchild ... resulting from the operation of the motor vehicle while the parent, spouse, child or stepchild, brother, sister, or hitchhiker was being transported without payment *in or upon the motor vehicle* unless the injuries or death are caused by the wanton or willful misconduct of the operator, owner, or person responsible for the operation of the motor vehicle.

Ind.Code § 34–30–11–1 (emphasis added). The Guest Statute is in derogation of the common law; thus, it must be strictly construed against limiting a claimant's right to bring suit. *Akers v. Sebren,* 639 N.E.2d 370, 371 (Ind.Ct.App.1994), *trans. denied.* Strict construction means "a close and conservative adherence to the literal or textual interpretation." *Id.* (quotation omitted). Where the legislature adopts a statute in derogation of the common law, we will presume that it is aware of the common law and does not intend to make any change therein beyond what it declares, either in express terms or by unmistakable implication. *Id.* In construing the Guest Statute, we are cognizant of the cardinal rule of statutory construction that a statute clear and unambiguous on its face need not and cannot be interpreted by a court, which must hold it to its plain meaning. *Coplen v. Omni Rests., Inc.,* 636 N.E.2d 1285, 1287 (Ind.Ct.App.1994). The words of the Guest Statute must be accorded their common meaning unless a different

purpose is clearly manifest from the statute itself. *Id.*

There is no dispute about the underlying facts of this case. C.M.L. was riding along with Kenneth while Kenneth was working for Republic collecting garbage. At some point on the route, C.M.L. exited the garbage truck to urinate. While he was standing on the ground, urinating in between the hydraulic tank and the truck cab, Kenneth—believing C.M.L. still to be asleep on the passenger seat—began driving the truck away and struck C.M.L. with the truck. Thus, the only question before us is whether the Guest Statute bars C.M.L.'s claim against Republic and Kenneth. Where the only allegation of error is that the trial court misapplied the law, our task on review is to apply the law correctly to the undisputed facts. *Id.* at 1286.

C.M.L. argues that he was not "in or upon" the garbage truck when he was injured, and therefore, the statute should not bar his claim. Republic and Kenneth counter that the terms "in or upon" as found in the Guest Statute are ambiguous, and we should therefore interpret their meaning. We find that the terms "in or upon" are not ambiguous and refuse to interpret their meanings. Instead, we apply their plain meanings and determine that under these facts C.M.L. was not "in or upon" the garbage truck when he was struck. We find that the Guest Statute does not bar his claim.[7]

### Conclusion

We find that a stepparent may not receive the benefit of the parental immunity doctrine unless the stepparent takes the formal step of becoming "invested with the rights and charged with the duties of a parent." We also find that the parental immunity doctrine does not apply if a parent is acting in a business capacity when causing an injury to a child. In addition, because the undisputed evidence shows that C.M.L. was not "in or upon" the vehicle when he was injured and because the statutory terms are unambiguous, we conclude that the Indiana Guest Statute does not bar this action.

Judgment reversed.

KIRSCH, J., and BAILEY, J., concur.

---

7. Because we find the statutory language to be unambiguous, we need not address Republic and Kenneth's arguments addressing alternative interpretations of the terms.