Carly **DAVIDSON**, a Minor, by Next
Friend Janet **FLOYD**, Mother and Nat-
ural Guardian of Carly Davidson, Ap-
pellant (Plaintiff Below),

v.

Melony **DAVIDSON**, Appellee
(Defendant Below),

Orange County, Indiana and Jeep
Eagle Corp. (Defendants Below)
(Non–Appealing Parties).

No. 47A01–9003–CV–109.

Court of Appeals of Indiana,
First District.

Aug. 15, 1990.

Betsy K. Greene, Nunn & Kelley Law
Office, P.C., Bloomington, for appellant.

Gary J. Clendening, Steven K. Emery, Harrell, Clendening & Coyne, A Professional Corporation, Bloomington, for appellee.

ROBERTSON, Judge.

Carly Davidson by her next friend, her mother, Janet Floyd, appeals the grant of summary judgment entered in favor of Melony Davidson, Carly's stepmother, on Carly's suit for damages arising out of an automobile accident which occurred while Carly was a passenger in Melony's jeep. We affirm.

On June 1, 1987, Carly, who usually lived with her mother, was visiting her father, William Davidson. William's second wife, Melony, was driving Carly in a 1981 Jeep CJ-7 to Paoli for a doctor's appointment and shopping trip. The roads were wet because it was raining. While traveling down Airport Road in Orange County, Melony attempted to negotiate a curve in the road at 25–30 miles per hour. As Melony began the turn, the jeep began to slide sideways towards the left-hand side of the road. In order to avoid a telephone pole, Melony was forced to steer hard to the right. At this time the jeep flipped and rolled. Carly suffered extensive injuries to her face and head, leaving a permanent scar.

On May 9, 1988, Carly, by her mother, Janet Floyd, filed a complaint against Melony, Orange County, and the Indiana Jeep and Eagle Corporation. This appeal concerns only Carly's action against Melony. Carly claimed that Melony negligently, willfully and wantonly drove her automobile resulting in serious permanent injury. Melony denied this claim in her answer. On August 11, 1988, Melony filed a motion for summary judgment claiming that there was no misconduct and that Carly's suit was barred under Indiana's guest statute codified at IND.CODE 9-3-3-1. A hearing was held on the motion on August 26, 1989, and on November 16, 1989, the trial court entered summary judgment in favor of Melony. From this determination, Carly now appeals.

■ We first note that Carly is appealing from the granting of a motion for summary judgment. When presented with such a challenge we consider the contents of the pleadings, affidavits, answers to interrogatories, responses to requests for admissions, and depositions in a light most favorable to the non-moving party to determine whether any genuine question of fact exists, and whether the moving party is entitled to summary judgment as a matter of law. *Franklin Bank and Trust Co. v. Mithoefer* (1990), Ind.App., 552 N.E.2d 39, 41.

■ Carly contends that the Indiana guest statute, I.C. 9-3-3-1, which bars hitchhikers and the immediate family members of a driver from suing that driver for injuries resulting from a car accident caused by that driver unless the driver's conduct was wanton or willful, violates the equal protection clause of the Constitution of the United States. We note that the Indiana guest statute has withstood similar constitutional challenges in the past. *Sidle v. Majors* (1976), 264 Ind. 206, 341 N.E.2d 763; *Frybarger v. Coffelt* (1979), 180 Ind. App. 160, 387 N.E.2d 104; *Fielitz v. Allred* (1977), 173 Ind.App. 540, 364 N.E.2d 786. Carly claims, however, that since these cases were decided, and the guest statute was found to be constitutional, I.C. 9-3-3-1 has been amended, and that the constitutionality of the guest statute as amended in 1984, has yet to be ruled upon.

In 1984, the legislature reduced the scope of the guest statute by barring only immediate family members and hitchhikers from recovering for damages caused by a driver's negligence rather than barring all guests from such recovery. The guest statute in its present form distinguishes between hitchhikers and immediate relatives, on the one side, and all other guests and non-guests, on the other side, and, therefore, creates a patent inequity between the treatment afforded the two groups. We must determine "whether or not the classification is reasonable and bears a fair and substantial relationship to the legislative purpose of the statute." *Si-*

*dle*, 264 Ind. at 210, 341 N.E.2d at 767.[1] In making this determination this court must presume that the classification is reasonable and does bear a relationship to a substantial state interest. *Id.* The burden is on Carly, as the plaintiff in the present case, to prove otherwise. *Miller v. State* (1987), Ind., 517 N.E.2d 64, 71. We hold that Carly has failed to meet this burden.

In *Sidle*, the supreme court identified three justifications for the guest statute as it existed at that time: 1. to eliminate the possibility of collusive lawsuits; 2. to protect insurance companies from the "Robin Hood" proclivities of juries, thereby protecting Indiana citizens from higher costs of liability insurance; and 3. to foster hospitality by insulating generous drivers from lawsuits by ungrateful guests. *Sidle*, 264 Ind. at 211–26, 341 N.E.2d at 767–69. Clearly, the overriding concern of the legislature in passing the guest statute appears to have been the protection of drivers and society at large from the actions of a few ungrateful and unscrupulous passengers. Despite the 1984 amendments to the guest statute, which narrowed the field of those barred from recovery to hitchhikers and close family members, the statute can be justified at least in part by the same factors the supreme court relied upon in *Sidle*.[2] The legislature may have perceived a greater risk of collusive lawsuits among family members, than among mere acquaintances. Also, a jury may be particularly inclined to indulge in the "Robin Hood" tactic of robbing from the "rich" insurance companies to give to the "poor"

victims where the parties are from the same family.

The appellant makes much of the fact that general liability insurance is now required in this state, *see*, I.C. 9–1–4–3.5, I.C. 9–2–1–15, and argues that this requirement undercuts the supreme court's decision in *Sidle* by making the legislature's alleged "protective purpose" superfluous. We disagree. We first note that the level of liability insurance which a car owner is required to obtain is a mere $25,000, and that such an amount can be exhausted very quickly in a personal injury action, leaving the driver of the vehicle personally liable for any overage. Furthermore, as noted in *Sidle*, the "costs" of a lawsuit amount to far more than a damage award due to an unfavorable judgment. "It also occurs to us that substantial detriments accrue to one who finds himself the defendant in a tort action, not the least of which is the possibility of a cancellation of his insurance or a substantial increase in his premiums." *Sidle*, 264 Ind. at 215, 341 N.E.2d at 769. Finally, we note, as did the supreme court in *Sidle*, that universal liability insurance simply increases the need to protect society in general from insurance fraud in these cases. *Id.* at 215, 341 N.E.2d at 770. Therefore we do not consider the requirement that owners of automobiles carry a minimum amount of liability insurance to detract from the supreme court's holding in *Sidle*.

In retaining the guest statute as it applies to close family members, the legislature may well have hoped to foster a coop-

---

1. While an equal protection challenge usually involves a two-tiered standard of review, in the present case we can summarily dismiss the first tier of that standard. No one claims that I.C. 9–3–3–1 involves a suspect classification, and the Supreme Court of Indiana held in *Sidle* that the right asserted in these cases, that is, Carly's right to a remedy for personal injury, is not a fundamental right. *Sidle*, 264 Ind. at 210–11, 341 N.E.2d at 767. Therefore, we need not apply the strict scrutiny standard to the present case. As stated in *Sidle* "If neither a fundamental right nor a suspect classification is involved, the standard of review is that the classification not be arbitrary or unreasonable." *Id.*

2. The statute as it relates to hitchhikers is perhaps better justified by noting that hitchhiking,

or standing in a roadway in an effort to solicit a ride from passing vehicles, is illegal in the State of Indiana, I.C. 9–4–1–91(a), and that such activity constitutes a Class C infraction. I.C. 9–4–1–127.1(b). The legislature may well have concluded that one who obtained a ride in a vehicle by illegal means should be barred from recovery for injuries resulting from the driver's mere negligence, as a further means of deterring hitchhiking. Because our legislature has demonstrated its disapproval for the act of hitchhiking and because the provisions of I.C. 9–3–3–1 can be interpreted as a means of deterring this act, we hold that the classification made in I.C. 9–3–3–1 is reasonable and bears a rational relationship to a substantial state interest.

erative atmosphere among family members regarding the use of family members' automobiles. As noted by the supreme court in *Sidle*, "Notwithstanding that there may be no direct financial loss arising from it, a lawsuit is not an experience which endears the plaintiff to the defendant." *Sidle*, 246 Ind. at 215, 341 N.E.2d at 769.

■ The appellant, Carly, claims that if promotion of family harmony is the end sought to be achieved by barring close family members from suing negligent drivers, then as a noncustodial stepchild she should be exempt from coverage under the statute. In support of this argument, Carly cites to two court of appeals' cases: *Gollnick v. Gollnick* (1987), Ind.App., 514 N.E.2d 645;[3] *Buffalo v. Buffalo* (1982), Ind.App., 441 N.E.2d 711. In these cases the court of appeals found that where parents are divorced, a noncustodial natural parent could not be considered immune from liability under the traditional parent-child immunity doctrine. As noted in *Buffalo* the original purpose of the parent-child immunity doctrine was to promote family harmony and where "[t]he domestic peace and tranquility of the family has already been broken" by divorce "[n]o logical reason grounded in public policy or common sense can be advanced for continued imposition of the immunity rule in favor of a noncustodial parent." *Buffalo*, 441 N.E.2d 711, 714.

We first note that both *Buffalo* and *Gollnick* were interpreting the judicially created doctrine of parent-child immunity. As stated in *Sidle*, "[t]hese doctrines of immunity were judicially created and therefore were subject to judicial repeal [or modification] when, in our opinion, they were determined to be no longer compatible in our society." *Sidle*, 264 Ind. at 216, 341 N.E.2d at 770. The decision to retain immunity for drivers from lawsuits instigated by the driver's stepchild was made by the legislature, and we, therefore, "are not at liberty to abolish it upon the same consider-

ations." *Id.* We cannot rely on precedent which abrogates a similar judicially created immunity as authority for abrogating the immunity granted by the legislature in I.C. 9-3-3-1.

Furthermore, the court of appeals decided the *Buffalo* case two years before the legislature amended I.C. 9-3-3-1. If the legislature wanted to adopt the same limitation on immunity from stepchildren in an automobile collision as was imposed on the common-law parent-child immunity doctrine in *Buffalo*, the legislature would have done so in its 1984 amendment of I.C. 9-3-3-1.

■ Also, a general rule of statutory construction requires that the words of the statute be accorded their commonly accepted meaning unless a different purpose is clearly manifest from the statute itself. *Park 100 Development Co. v. Indiana Department of State Revenue* (1981), Ind., 429 N.E.2d 220, 222. Here, I.C. 9-3-3-1 clearly states that an operator of a motor vehicle is not liable for loss or damage arising from injuries to a stepchild resulting from the operation of that vehicle, unless the driver engaged in willful or wanton behavior. There is nothing in the statute to suggest that the term stepchild should be interpreted to exclude noncustodial stepchildren. Therefore applying the plain meaning of the term stepchild, Carly's suit against Melony is barred under I.C. 9-3-3-1.

Finally, we note, as stated earlier, "family harmony" is not the only justification for the provisions of I.C. 9-3-3-1. The legislature's concern about increased opportunities to engage in collusion and insurance fraud due to the familial relationship constitutes the substantial state interest to be protected under the statute. Carly's status as a noncustodial stepchild does not affect the legislature's concern in these areas; as a noncustodial stepchild she is just as vulnerable to pressure to engage in such a scheme as she would be if she were living

---

3. *Gollnick* was modified on rehearing; the court of appeals noted that the case should have been decided according to California law. *Gollnick v. Gollnick* (1988), Ind.App., 517 N.E.2d 1257. The court then held that because parent-child immunity had been abrogated under California law, the child had no cause of action. The supreme court adopted this opinion as its own in *Gollnick v. Gollnick* (1989), Ind., 539 N.E.2d 3.

with the stepparent-driver. Therefore, we reject Carly's claim that as a noncustodial stepchild she is exempt from coverage under the statute.

We conclude that the state interests identified by the supreme court in *Sidle* apply to the amended version of I.C. 9–3–3–1 and that the classifications created by the statute bear a reasonable relationship to these interests. Carly failed to meet her burden to overcome the presumption in favor of the constitutionality of I.C. 9–3–3–1. We, therefore, hold that Melony was entitled to judgment as a matter of law.

Judgment affirmed.

BAKER and STATON, JJ., concur.