**KLLM, INC. and Keith James Pierce, Appellants–Plaintiffs,**

v.

**LaCrecia E. LEGG, as Personal Representative of the Estate of Mark S. Hanna, and Laura Brewer, Appellees–Defendants.**

No. 32A01–0409–CV–392.

Court of Appeals of Indiana.

April 27, 2005.

---

Lynne D. Lidke, Michael B. Langford, Scopelitis, Garvin, Light & Hanson, Indianapolis, IN, Attorney for Appellant.

Darlene R. Seymour, Kiefer & McGoff, Indianapolis, IN, Kimberly E. Williams, Whiteman Burdette, PLLC, Charleston, WV, Attorneys for Appellee.

## OPINION

ROBB, Judge.

Mark Hanna died as a result of injuries he sustained when Keith Pierce struck Hanna while Hanna was assisting Pierce in backing up a semi tractor-trailer combination that Pierce was driving on behalf of KLLM, Inc. Pierce and KLLM, Inc. (collectively, "KLLM") filed a declaratory judgment action to determine whether Indiana's Guest Statute, Indiana Code section 34-30-11-1, barred any claim that Hanna's estate, by LaCrecia Legg as the estate's personal representative, and Laura Brewer, Hanna's mother, might have against KLLM. The parties filed cross motions for summary judgment, and Legg and Brewer (collectively, "Legg") filed a Trial Rule 12(B)(6) motion to dismiss. The trial court denied all motions and subsequently entered final judgment in favor of Legg, finding that Indiana's Guest Statute did not apply to the case at hand. KLLM now appeals. We affirm in part and reverse and remand in part.[1]

### Issues

KLLM raises one issue for our review, which we restate as whether the trial court properly denied KLLM's motion for summary judgment. Additionally, Legg raises the following restated issue on cross-appeal: whether the trial court properly denied Legg's motion to dismiss.

### Facts and Procedural History

On May 18, 2003, Pierce was driving a semi tractor-trailer combination for KLLM, Inc. from Paris, Texas to Hebron, Kentucky. Near Nashville, Tennessee, Pierce observed a man, later identified as Hanna, carrying a suitcase and a sleeping bag and walking along Interstate 40 with his thumb pointed out towards traffic.

Pierce stopped the tractor-trailer and offered Hanna a ride. Hanna accepted and informed Pierce that he was trying to get to his girlfriend's house in Louisville, Kentucky.

Upon arrival in Louisville, Hanna attempted to contact his girlfriend by telephone, but he was unable to reach her. Pierce suggested that Hanna continue riding with him to Hebron. After unloading his cargo in Hebron, Pierce began traveling to pick up a load in Indianapolis, Indiana. Hanna continued riding along with Pierce. After arriving in Indianapolis and picking up a trailer full of cargo headed to Arlington, Texas, Pierce and Hanna began heading back to Louisville, Kentucky, so that Hanna could again attempt to contact his girlfriend.

While en route in the early morning hours of May 20, 2003, Pierce and Hanna pulled into a rest area along Interstate 70 in Hendricks County. Pierce attempted to park the tractor-trailer in a parking spot at the rest area, but he was unable to do so. He asked Hanna to exit the vehicle and assist him in backing the tractor-trailer out of the parking space. Hanna agreed and got out of the tractor-trailer. While Hanna was standing behind the tractor-trailer, Pierce began backing up. As Pierce reversed the tractor-trailer, Hanna became pinched between the tractor-trailer that Pierce was driving and another parked tractor-trailer. Hanna died as a result of his injuries.

On June 2, 2003, KLLM filed a complaint for declaratory judgment to determine whether Indiana's Guest Statute applied to the facts at hand. Both parties subsequently filed cross motions for summary judgment, and Legg filed a Trial

---

1. We heard oral argument on this case on April 7, 2005, at DePauw University in Greencastle. We thank the attorneys for their capa-ble advocacy and DePauw University for their gracious reception.

Rule 12(B)(6) motion to dismiss. After a hearing, the trial court denied all motions. Thereafter, the trial court entered final judgment in favor of Legg, and both parties now appeal.[2] Additional facts will be provided as necessary.

### Discussion and Decision

KLLM contends that the trial court erred in denying its motion for summary judgment because Indiana's Guest Statute bars any claims against KLLM arising out of Hanna's death. Legg contends that the trial court erred in denying her motion to dismiss. We will address each contention in turn.

### I. Denial of KLLM's Summary Judgment Motion

#### A. Standard of Review

When reviewing a denial of summary judgment, we apply the same standard as the trial court. *C.M.L. ex rel. Brabant v. Republic Servs., Inc.*, 800 N.E.2d 200, 202 (Ind.Ct.App.2003), *trans. denied.* Summary judgment is appropriate only where no genuine issues of material fact exist and the movant is entitled to judgment as a matter of law. *Id.* Our standard of review is not altered by cross motions for summary judgment on the same issues. *Id.* A party appealing the denial of summary judgment carries the burden of persuading us that the trial court's decision was erroneous. *Id.* When the material facts are not in dispute, our review is limited to determining whether the trial court correctly applied the law to the facts. *Id.* If the issue presented is purely a question of law, our review is *de novo*. *Id.* We are not bound by the trial court's findings and conclusions of law. *Id.*

Because Indiana's Guest Statute is in derogation of the common law, it must be strictly construed against limiting a claimant's right to bring suit. *Id.* at 208–09. Strict construction involves a close, conservative adherence to the literal or textual interpretation. *Id.* (quoting *Akers v. Sebren*, 639 N.E.2d 370, 371 (Ind.Ct. App.1994), *trans. denied* ). If the legislature adopts a statute in derogation of the common law, we will presume that the legislature is aware of the common law and does not intend to make any change beyond that which is declared in the statute. *Republic Servs., Inc.*, 800 N.E.2d at 208–09. The cardinal rule of statutory construction is that a statute clear and unambiguous on its face cannot be interpreted by us; instead, we must hold to its plain meaning. *Id.* Therefore, the words of Indiana's Guest Statute must be accorded their common meaning unless a different purpose is clearly manifested by the statute itself. *Id. See also Akers*, 639 N.E.2d at 371; *Davidson ex rel. Floyd v. Davidson*, 558 N.E.2d 849, 852 (Ind.Ct.App. 1990), *trans. denied.*

#### B. Indiana's Guest Statute

In 1929, the Indiana General Assembly enacted a guest statute that barred motor vehicle guests from recovering damages caused by a driver's negligence. *Stephenson v. Ledbetter*, 596 N.E.2d 1369, 1372 (Ind.1992). In 1984, the General Assembly amended Indiana's Guest Statute by reducing its scope to bar only immediate family members and hitchhikers from recovering damages caused by a driver's negligence. *Davidson*, 558 N.E.2d at 850. Indiana's Guest Statute, in its current form, codified at Indiana Code section 34–30–11–1, provides,

> The owner, operator, or person responsible for the operation of a motor vehicle is not liable for loss or damage arising from injuries to or the death of:

2. Legg does not appeal the trial court's denial of her motion for summary judgment.

(1) the person's parent;

(2) the person's spouse;

(3) the person's child or stepchild;

(4) the person's brother;

(5) the person's sister; or

(6) a hitchhiker;

resulting from the operation of the motor vehicle while the parent, spouse, child or stepchild, brother, sister, or hitchhiker was being transported without payment in or upon the motor vehicle unless the injuries or death are caused by the wanton or willful misconduct of the operator, owner, or person responsible for the operation of the motor vehicle.

In *Davidson*, we recognized that the purposes of Indiana's Guest Statute are threefold: first, it reduces the threat of "collusive" lawsuits, whose likelihood would be greater between family members than mere acquaintances; second, it reduces the threat of "Robin Hood" proclivities of juries where juries would be more eager to take from the "rich" liability insurance companies and give to the "poor" victims, especially where the victims were members of the same family; and three, it fosters family harmony by not allowing family members to sue and recover for injuries caused by another family member's negligence. *Davidson*, 558 N.E.2d at 851. With respect to hitchhikers, we recognized a fourth purpose for Indiana's Guest Statute: it deters the illegal act of hitchhiking by not allowing hitchhikers to recover for their injuries caused by a driver's negligence. *Id.*

Thus, under the Guest Statute, KLLM would not be liable for any loss or damage arising from the death of Hanna if Hanna was a hitchhiker who was being transported without payment in or upon the motor vehicle at the time of his death.[3]

## C. Hanna was a Hitchhiker

█ In its order denying KLLM's motion for summary judgment, the trial court found that Hanna was a hitchhiker for purposes of Indiana's Guest Statute. Legg contends that the trial court erred because Hanna was not a hitchhiker at the time of his death. We disagree.

Indiana Code section 34–6–2–57 provides, " 'Hitchhiker', for purposes of [Indiana's Guest Statute], means a passenger who has solicited a ride in violation of [Indiana Code—section 9–21–17–16]." Indiana Code section 9–21–17–16 states,

A person may not stand in a roadway for the purpose of soliciting a ride from a person who drives a vehicle unless the person soliciting a ride is faced with an emergency on the roadway, in which case the person may secure a ride to obtain assistance.

In the instant case, Hanna was walking along Interstate 40 with his thumb pointed out towards traffic, carrying a suitcase and a sleeping bag. The undisputed evidence shows that Hanna was a hitchhiker when he first entered Pierce's tractor-trailer near Nashville, Tennessee. Legg contends, however, that even if Hanna was traveling with Pierce as a hitchhiker in

3. Even if Hanna, at the time of his death, was a hitchhiker being transported by Pierce without payment in or upon the motor vehicle, KLLM may nevertheless be liable under Indiana's Guest Statute for any loss or damage arising from Hanna's death if Hanna's death was caused by Pierce's wanton and willful misconduct. Legg filed a cross motion for summary judgment, contending that Hanna's death was caused by Pierce's wanton and willful misconduct. The trial court denied Legg's cross motion for summary judgment, finding that whether an accident was caused by wanton or willful misconduct is a question of fact and is best left for the factfinder. Neither party appeals the trial court's decision on this issue. Therefore, we need not address it.

Tennessee, Hanna's status as a hitchhiker terminated in Louisville, Kentucky. When Hanna accepted a ride from Pierce, he told Pierce that he was attempting to get to Louisville, where his girlfriend lived. However, once they arrived in Louisville, and Hanna was unable to contact his girlfriend, Pierce suggested that Hanna continue traveling with him. Thus, Legg argues that during the trip from Louisville to Indiana, where Hanna ultimately died, Hanna's status changed from a hitchhiker to Pierce's invited guest.

KLLM counters that Hanna's ultimate intention when he accepted a ride from Pierce was to contact his girlfriend in Louisville. When Hanna was unable to do so, he continued his journey with Pierce; therefore, no interruption occurred during the journey that transformed Hanna from the status of a hitchhiker to an invited guest.

Case law on this issue does not exist in Indiana. However, in *Lines v. Teachenor*, 273 S.W.2d 300 (Mo.1954), the Missouri Supreme Court stated, "The general rule is that the status of a rider is determined at the outset of the trip." *Id.* at 303. Moreover, in *Bateman v. Ursich*, 36 Wash.2d 729, 220 P.2d 314 (1950), the Washington Supreme Court held that under Washington's guest statute,

> the nature of the relationship between the operator of a motor vehicle and a rider therein is to be determined as of the time of the beginning of the transportation. If the rider is a guest within the meaning of this statute, his status remains unchanged throughout the journey.

*Id.* at 315.

Hanna's status when he first entered Pierce's tractor-trailer was that of a hitchhiker. Legg's contention that Hanna's status changed in Louisville when Hanna was unable to contact his girlfriend is un-

persuasive; Hanna agreed to continue on with Pierce on his journey. Because there was no interruption in their journey, Hanna's status as a hitchhiker remained unchanged, and he was a hitchhiker, for purposes of Indiana's Guest Statute, at the time of his death.

### D. Hanna was "in or upon" the Motor Vehicle

■ In denying KLLM's motion for summary judgment, the trial court found that Hanna was not "in or upon the motor vehicle" at the time of his death. KLLM argues that the trial court erred because Hanna was "in or upon" the motor vehicle, for purposes of the Guest Statute, even though he was temporarily outside the vehicle when he was injured. We agree with KLLM.

Every case decided by Indiana's appellate courts concerning the applicability of the Guest Statute since the statute's inception in 1929 has involved the operation of a motor vehicle while the passenger was either inside or physically on the vehicle, with the exception of *Republic Services.* In *Republic Services*, a nine-year-old child accompanied his stepfather on his garbage collection route. The child slept under a blanket in the passenger seat while his stepfather drove his collection route. On one particular stop, while his stepfather was collecting garbage, the child exited the vehicle without his stepfather's knowledge and urinated between the hydraulic tank and the cab of the truck. The child's stepfather reentered the vehicle and, assuming that the child was still asleep under the blanket in the passenger seat, began pulling the truck forward. The child was subsequently injured when the truck pulled forward. *Republic Servs., Inc.*, 800 N.E.2d at 201–02.

The child, by his mother, ultimately sued his stepfather and Republic Services, his

stepfather's employer. Republic Services and the child's stepfather filed for summary judgment, arguing, *inter alia*, that the Indiana Guest Statute barred the child's claim. The trial court ruled in their favor, finding that Indiana's Guest Statute barred the child's claim. *Id.*

On appeal, the child argued that the Guest Statute did not apply because he was not "in or upon" the garbage truck at the time when he was injured. Republic Services and the child's stepfather countered that the phrase "in or upon" in the Guest Statute was ambiguous and, thus, the court should interpret its meaning. A panel of this court agreed with the child and held the following:

> We find that the terms "in or upon" are not ambiguous and refuse to interpret their meanings. Instead, we apply their plain meanings and determine that under these facts [the child] was not "in or upon" the garbage truck when he was struck. We find that the Guest Statute does not bar his claim.

*Id.* at 209.

The panel in *Republic Services* did not explicitly define the phrase "in or upon." However, in *Michigan Mut. Ins. Co. v. Combs*, 446 N.E.2d 1001, 1007 (Ind.Ct.App. 1983), we held that the term "upon" was ambiguous, and we interpreted its meaning in the context of an insurance policy. In *Michigan Mutual,* a driver's vehicle became disabled while stopped in a lane of traffic, so the driver walked to his brother's place of employment to obtain his brother's assistance in fixing the vehicle. The driver and his brother subsequently returned to the vehicle to fix it. While the driver's brother was working on the engine at the rear of the vehicle, he was struck by another vehicle and injured. *Id.* at 1002.

The driver of the other vehicle was uninsured, so the driver's brother attempted to file a claim under the uninsured motorist clause of the driver's insurance policy. The clause protected the "insured" against damages caused by an uninsured motorist. An "insured" was defined by the policy as any person while "occupying" an insured automobile. The policy defined "occupying" as "in or *upon* or entering into or alighting from." *Id.* (emphasis added).

The insurance company filed an action for declaratory judgment to determine if the driver's brother was covered by the uninsured motorist clause. The trial court found that the driver's brother was occupying the vehicle according to the policy and, thus, was covered by the clause. We agreed. We held that the term "upon" was ambiguous in its meaning. *Id.* at 1007. We stated that it was a claimant's relationship with the vehicle that determined whether he was "occupying" it, and because the driver's brother was working on the vehicle's engine when he was injured, a sufficient relationship existed between the driver's brother and the vehicle so as to establish that the driver's brother was "upon" the vehicle. *Id.* at 1006–07. *See also United Farm Bureau Mut. Ins. Co. v. Pierce,* 152 Ind.App. 387, 283 N.E.2d 788, 790–91 (1972) (holding that where a vehicle was stuck in the snow and the owner alighted from the vehicle to push it out and was thereafter injured, vehicle owner was "in or upon" the vehicle for insurance policy purposes because evidence of physical contact with the vehicle prior to the injury was sufficient to establish that the owner was "upon" the vehicle).

*Legg* contends that *Michigan Mutual* is inapposite because, in that case, we were interpreting the language within an insurance policy and not the language within a statute, as we are required to do here. Instead, Legg contends that because Hanna was not inside or physically on the vehicle at the time of his death, Indiana's

Guest Statute was inapplicable. We disagree.

■ The phrase "in or upon" contained in the Guest Statute is written in the disjunctive; therefore, the General Assembly intended that the term "in" and the term "upon" be given different meanings. Under *Michigan Mutual*, the driver's brother was "upon" the motor vehicle, even though he was not inside or physically on the vehicle, because a sufficient relationship existed between him and the vehicle. 446 N.E.2d at 1006–07. We agree with *Michigan Mutual's* interpretation of the term "upon." Under the Guest Statute, then, in order for a person to be "upon" a motor vehicle, the person is not required to be physically inside the vehicle at the time; instead, a person may be "upon" a motor vehicle if a sufficient relationship exists between that person and the vehicle.

Here, Hanna had only temporarily left the vehicle in order to assist Pierce in backing up the tractor-trailer. The undisputed evidence shows that Hanna had intended to re-enter the vehicle and continue his journey with Pierce after he finished assisting Pierce in backing up the tractor-trailer. Hanna's actions in temporarily exiting the vehicle and assisting Pierce were in direct furtherance of their journey back to Louisville; thus, a sufficient relationship existed between Hanna and the tractor-trailer to establish that Hanna was "upon" the tractor-trailer at the time of his death.

Moreover, we agree with KLLM that *Republic Services* is distinguishable. In *Republic Services*, when the child exited the garbage truck to urinate, his actions were not in direct furtherance of his and his stepfather's journey. Therefore, a sufficient relationship failed to exist between the child and the garbage truck so as to establish that the child was "upon" the garbage truck at the time of his injuries. For these reasons, we hold that Hanna was "in or upon" the motor vehicle at the time of his death for purposes of Indiana's Guest Statute.

### E. Summary

The trial court correctly found that Hanna was a hitchhiker for purposes of Indiana's Guest Statute. However, the trial court incorrectly found that Hanna was not "in or upon" the motor vehicle at the time of his death. Therefore, the trial court's denial of KLLM's motion for summary judgment is reversed.

## II. Denial of Legg's Motion to Dismiss

Legg contends on cross-appeal that the trial court erred in denying Legg's Trial Rule 12(B)(6) motion to dismiss the complaint for declaratory judgment. More specifically, Legg contends that the trial court erred in allowing KLLM's action to proceed because a declaratory judgment action in the case at hand is not appropriate. We disagree.

### A. Standard of Review

■ The use of a declaratory judgment is discretionary with the court; therefore, a trial court's decision to allow a declaratory judgment to proceed is reviewed for an abuse of discretion. *See Community Hosps. of Indiana, Inc. v. Estate of North*, 661 N.E.2d 1235, 1241 (Ind.Ct.App.1996), *trans. denied*. When reviewing a Trial Rule 12(B)(6) motion to dismiss in a declaratory judgment action, the facts as alleged in the complaint must be taken as true. *Volkswagenwerk, A.G. v. Watson*, 181 Ind.App. 155, 390 N.E.2d 1082, 1084 (1979).

### B. Uniform Declaratory Judgment Act

Indiana Code section 34–14–1–2 provides, in pertinent part,

Any person ... whose rights, status, or other legal relations are affected by a statute ... may have determined any question of construction or validity arising under the ... statute ... and obtain a declaration of rights, status, or other legal relations thereunder.

Nonetheless, "[t]he court may refuse to render or enter a declaratory judgment or decree where the judgment or decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceeding." Ind.Code § 34–14–1–6. "The purpose of [a declaratory judgment action] is to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations; and is to be liberally construed and administered." Ind.Code § 34–14–1–12.

■ The Uniform Declaratory Judgment Act was not intended to eliminate well-known causes of action or to substitute an appellate court for a court of original jurisdiction, particularly where the issues are ripe for litigation through the normal processes. *Volkswagenwerk, A.G.*, 390 N.E.2d at 1085. Instead, the Act was intended to furnish a "full and adequate remedy where none existed before," and a declaratory judgment action should not be resorted to where such a judgment is unnecessary. *Id.* Such a judgment is unnecessary where a full and adequate remedy is already provided by another cause of action. *Id.* However, "[t]he existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate." Ind. Trial Rule 57. "The test to determine the propriety of declaratory relief is whether the issuance of a declaratory judgment will effectively solve the problem involved, whether it will serve a useful purpose, and whether or not another remedy is more effective or efficient." *Boone County Area Plan Comm'n v. Kennedy*, 560 N.E.2d 692, 696 (Ind.Ct.App.1990), *trans. denied.*

## C.  Motion to Dismiss

■ The trial court did not abuse its discretion in allowing the declaratory judgment action to proceed because the action was appropriate. The issuance of a declaratory judgment in this case would have effectively solved the problem involved because such a judgment would serve to significantly narrow or completely terminate any controversy over whether Indiana's Guest Statute applied to the circumstances surrounding Hanna's death. Moreover, the declaratory judgment action served a useful purpose in defining the parties' legal relations arising from the circumstances surrounding Hanna's death. Finally, Legg has not shown that another remedy was more effective or efficient than a declaratory judgment action filed in the state where the accident occurred and only a few weeks after the accident occurred. In fact, Legg has not yet filed a lawsuit, and no suit is otherwise pending in this case. For these reasons, the trial court did not abuse its discretion in denying Legg's motion to dismiss and allowing the declaratory judgment action to proceed.

### *Conclusion*

The trial court correctly concluded that Hanna was a hitchhiker under Indiana's Guest Statute at the time of his death but erred in finding that Hanna was not "in or upon" the vehicle. Therefore, we reverse the trial court's denial of KLLM's motion for summary judgment and remand this cause to the trial court for further proceedings consistent with this opinion. Also, because we hold that the declaratory judgment action was appropriate, the trial court did not abuse its discretion in allowing the declaratory action to proceed. Thus, we affirm the trial court's denial of Legg's motion to dismiss.

Affirmed in part and reversed and remanded in part.

RILEY, J., and CRONE, J., concur.